UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JAMES HAROLD HIGGASON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-324 TS |
| | ) | |
| DAN R. MCBRIDE, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION**

**A.   Background**

Petitioner James Higgason, a prisoner confined at the Westville Correctional Facility, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He challenges a demotion in credit time earning classification as a result of a prison disciplinary hearing. This case is before the Court on Mr. Higgason's amended petition.

On August 26, 2003, Mr. Higgason gave Counselor Tracy Jacks a lengthy legal appendix to be photocopied and submitted to a court. After receiving the appendix, Counselor Jacks wrote a conduct report charging Mr. Higgason with "counterfeiting, forging, or unauthorized reproduction or possession of any document, article, identification, money, pass, security or official paper, a class B offense #230." (Resp't Ex. A.) In the narrative portion of the conduct report, Counselor Jacks wrote:

> On the above date and approx. time I recvd this document (certificate of service) from offender Higgason placed within an approx 78 page appendix. Offender Higgason was attempting to have this certificate reproduced for further distribution, he intentionally whited out the date of original signature in order to use later.

(Resp't Ex. A.)

On September 23, 2003, a three member disciplinary hearing board found Mr. Higgason guilty and sanctioned him with a demotion from Credit Class II to Credit Class III, a written reprimand, and restrictions on phone, recreation, and commissary privileges. Mr. Higgason unsuccessfully appealed to the facility superintendent and the final reviewing authority.

**B.     Discussion**

In his amended petition, Mr. Higgason asserts that Counselor Jacks wrote the conduct report in retaliation for his legal activities; that the disciplinary hearing board denied him a witness; that the board did not conduct the disciplinary hearing within the time limits established by Indiana Department of Correction policy ("IDOC"); and that the board's finding of guilt is not supported by a sufficient written statement of the reasons they found him guilty.

Where prisoners lose good time credits or are demoted to a lower credit time earning classification at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). There must also be "'some evidence' to support the decision of the prison disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

**(1)     *Retaliation***

In count one of his amended petition, Mr. Higgason alleges that Counselor Jacks charged him in retaliation for generating a "prolific amount of litigation" and for having put her "on

notice of his intent to file a lawsuit against her for refusing to comply with his requests for photocopies of his court pleadings for filing." (Am. Pet. 6.)

The accuser's motive is beyond the scope of habeas corpus review: "as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999) (citing *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994)); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987); and *Hanrahan v.Lane*, 747 F.2d 1137, 1139–41 (7th Cir. 1984). Thus, only the question of procedural due process is at issue, and the Court need not consider Mr. Higgason's retaliation claims any further.

**(2)    Denial of Counselor Watts as a Witness**

Due process requires that prisoners have the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 566. A "rule that allows inmates and staff members to refuse to testify at disciplinary hearings without explanation violates the Due Process Clause of the Fourteenth Amendment." *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992). But a prisoner's due process right to call exculpatory witnesses at prison disciplinary hearings is not unlimited. Prisoners do not have the right to confront or cross-examine their accusers, *Wolff*, 418 U.S. at 567, and witnesses may be limited consistent with institutional safety and correctional goals. *Hill*, 472 U.S. at 454. Prison disciplinary boards may also decline to hear witnesses whose testimony would be irrelevant or repetitive. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

At the screening stage, Mr. Higgason asked for Counselor Watts as a witness. (Resp't Ex. B.) A prison official contacted Counselor Watts and took a verbal statement from him.

3

According to this official, Counselor Watts stated that he "wasn't working this day and has no personal knowledge of this incident." (Resp't Ex. F.)

It does not appear from the record that Counselor Watts could provide relevant testimony to the question of whether Mr. Higgason attempted to improperly reproduce a certificate of service on August 26, 2003. Accordingly, the disciplinary board could properly decline to require him to testify at the hearing.

**(3)     Timeliness of the Hearing**

In count three of his amended petition, Mr. Higgason asserts that IDOC policy requires disciplinary hearings to be conducted within seven working days of the incident unless the postponement is properly documented. Mr. Higgason alleges that the disciplinary board postponed his hearing without proper documentation.

Even if the disciplinary board did not properly postpone Mr. Higgason's disciplinary hearing in accordance with IDOC policy, his petition states no claim upon which habeas corpus relief can be granted. Due process requires that a prisoner charged with a disciplinary offense be given "advance written notice of the charges against [him] at least twenty-four hours before the hearing." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (citing *Hill*, 472 U.S. at 454, and *Wolff*, 418 U.S. at 566)). *Wolff*, however, does not establish that prisoners are entitled to disciplinary hearings within a specific time of the incident.

Mr. Higgason relies on a policy created under authority of state law, but violations of state law do not entitle prisoners to habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Hester v. McBride*, 966 F. Supp. 765, 774–75 (N.D. Ind 1997) (violation of IDOC rules states no claim for habeas corpus relief).

4

**(4)    Sufficiency of the Evidence**

In count four of his amended petition, Mr. Higgason asserts that the "finding of guilt is not supported by a written statement of reason that is sufficient to allow a reviewing court to determine that the hearing officer did not act arbitrarily and unreasonably." (Am. Pet. 15.)

The disciplinary board's finding of guilt must contain a "'written statement' . . . as to the evidence relied on and the reasons" for the disciplinary action. *Wolff*, 418 U.S. at 564 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972)). The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is very modest; there need only be "some evidence" to support the decision of the prison disciplinary board." *Hill*, 472 U.S. at 455. A reviewing court must uphold a finding of guilt if "there is any evidence in the record that could support the conclusion reached" by the board. *Id*. at 457. In the appropriate circumstances, the conduct report alone may be sufficient evidence to support a finding of guilt. *See McPherson*, 188 F.3d at 786 (7th Cir. 1999). The court must carefully scrutinize the sufficiency of the disciplinary board's statement of facts it relied on to find the prisoner guilty. *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir. 1983).

(a)    *The Evidence Relied on by the Disciplinary Board to Find Mr. Higgason Guilty.*

The Fourteenth Amendment's due process clause guarantees prisoners advance written notice of the charges "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. At the same time, there are occasions when prison officials may change the charge at the hearing, so long as the new charge also conforms to the facts stated in the conduct report. *See, e.g.*, *Holt v. Caspari*, 961 F.2d 1370, 1373 (prisoner not denied due process where a change in charges increases potential penalties but factual basis for both charges remains the same).

The conduct report Counselor Jacks wrote against Mr. Higgason is confusing. At the top of the page, it cites several possible offenses: "counterfeiting, forging, or unauthorized reproduction or possession of any document, article, identification, money, pass, security or official paper." (Resp't Ex. A.) The narrative of the conduct report, however, establishes that the factual basis for the charge was Higgason's attempt "to have this certificate [of service] *reproduced*," (Resp't Ex. A.) (emphasis added), not counterfeiting, forgery, possession of money or altering any official document.[1]

To find Mr. Higgason guilty, the disciplinary board relied on the "document" and on Mr. Higgason's statement "yeah I forged the shit." (Resp't Ex. F.) Also, the board found that "dates covered up on document" and Mr. Higgason's "use of tape" justified its finding of guilt.

Such finding of guilt was erroneous. The conduct report did not state facts notifying Mr. Higgason that he would have to defend himself against charges of forgery, altering an official or court document, or possession or use of tape. The factual basis contained in Counselor Jacks's conduct report supports only a charge that Mr. Higgason attempted to reproduce his certificate of service. The bases for the board's finding of guilt did not match up with notice of the actual charges against Mr. Higgason. The certificate of service is not money, identification, a pass, or any official paper or court document; it is a handwritten document Mr. Higgason generated to comply with the requirements of Federal Rule of Civil Procedure 5. Because Mr. Higgason generated this document himself, a charge that he counterfeited or forged it makes no sense.

---

[1] The Court ordered the Respondent to produce the entire record of the administrative proceedings, but he has not done so. The conduct report describes the document Counselor Jacks took from Mr. Higgason as a "certificate of service," and states that it is "attached" to the conduct report. (Resp't Ex. A.) The copy of the conduct report provided to the Court, however, has no attachment.

With his traverse, Mr. Higgason attached a sample of the certificate of service he states that he uses when he files materials with the courts. (Pet. App. B.) Indeed, Mr. Higgason has used this form when filing documents with this Court in this and other cases. The respondent has not objected to the accuracy of this sample, so, for the purpose of this memorandum, the Court will assume that the sample certificate of service is similar to the one Mr. Higgason submitted to Counselor Jacks on August 26, 2003.

Even if he "whited out" part of his certificate of service, it could not support a charge that he altered any sort of official document.[2]

The respondent points out in his memorandum, citing *McPherson v. McBride*, that in the proper circumstances the conduct report alone may be sufficient evidence to support a finding of guilt. *See McPherson*, 188 F.3d at 787. These, however, are not such circumstances. The Report of the Disciplinary hearing does not mention that it relied on Counselor Jacks's conduct report either in determining the facts or in finding Mr. Higgason guilty. In fact, in the portion of the Report meant to demonstrate upon which evidence the board relied, the checked "Statement of Offender" box and a blank "Staff Reports" box show definitively that the board did not rely on the conduct report.

Counselor Jacks's conduct report is based on personal knowledge and describes the offense she believed Mr. Higgason committed. If the disciplinary board had cited the conduct report, it might have supported a finding of guilt on the charge that Mr. Higgason attempted to reproduce a certificate of service. But the board did not rely on the conduct report. Moreover, Counselor Jacks's conduct report would not support a finding that Mr. Higgason committed forgery, possessed tape or altered an official document with tape. In the circumstances presented in this disciplinary proceeding, this Court cannot rely on the conduct report to support the board's finding of guilt.

---

[2]That the board believed Mr. Higgason was guilty of forgery rather than attempting to photocopy a handwritten certificate of service required by the court is a mistake with potentially significant consequences. IDOC disciplinary boards exercise a wide array of sanctions, ranging from a verbal reprimand to restrictions on privileges such as phones or commissary, to disciplinary confinement, and, finally, to the most severe — loss of credit time or demotion in credit earning classification.

In this case, the board warned Mr. Higgason that "no tape is to be used on legal documents" (Resp't Ex. A.), restricted privileges, and demoted a credit earning class. Forgery or altering official or court documents is a serious offense, and a board finding a prisoner guilty on such charges may warrant a demotion in credit earning class. However, the same punishment for attempting to reproduce a certificate of service may be excessive. In any case, since the disciplinary board did not find that Mr. Higgason attempted to have his certificate of service reproduced, there is no way of knowing what sanction it might have imposed had it found him guilty of that charge.

(b)     *The Confiscation Notice.*

The respondent submitted a confiscation notice as part of the administrative record of this disciplinary proceeding. (Resp't Ex. D.) This notice provides a possible explanation for the disciplinary board's departure from the conduct report and its impression that Mr. Higgason stood charged with forging or altering documents and possessing and using tape.

The confiscation notice was prepared on September 23, 2003, almost a month after the conduct report, by Correctional Sergeant Jackson. In this notice, Sgt. Jackson describes the property confiscated on that date as: "(2) altered court documents w/tape on front and back" and "(1) altered state document w/forged dates + signature  Offender admitted to forgery of documents." (Resp't Ex. D.) The notice explained the reasons for confiscation: "altered documents are prohibited at this facility[;] tape is prohibited at this facility."

The respondent has not provided the Court with the actual documents that formed the basis of the confiscation notice. Because of that, and because the date of confiscation is the same day the hearing was held, the Court cannot say conclusively that this notice, and whatever documents were attached to it, should have been part of this disciplinary proceeding.[3]

A physical copy of the certificate of service Mr. Higgason submitted to Counselor Jacks has, at most, marginal relevance to the conduct report. Even more so, documents other than the

---

[3] Because the documents confiscated on September 23, 2003, are not part of the record before this Court, it is impossible to determine whether the certificate of service that forms the basis for the conduct report was among the documents apparently confiscated on that date. It is likely that it was not. Counselor Jacks must have confiscated the certificate of service on August 26 because she states in her conduct report that she attached the certificate of service to the conduct report. Moreover, Counselor Jacks's description of the certificate of service does not correspond with Sgt. Jackson's description of the documents he confiscated. Counselor Jacks confiscated a handwritten certificate of service; the documents Sgt. Jackson confiscated were "Court documents" and a "state document w/forged dates and signatures." Finally, Counselor Jacks states that Mr. Higgason "whited out" portions of the certificate of service; the confiscation notice deals with state documents that had "tape on front and back."

8

certificate of service are irrelevant to the charge Counselor Jacks brought against Higgason. If Sgt. Jackson confiscated documents that were not in the appendix Mr. Higgason sought to have Counselor Jacks copy on August 26, 2003, they are irrelevant to the charges she brought against him. Even if Sgt. Jackson confiscated other documents from that appendix, they would be irrelevant to the charge that Mr. Higgason attempted to have his certificate of service reproduced. No document other than the certificate of service should have been part of this disciplinary proceeding, and references to documents other than the certificate of service should have never been presented to the disciplinary board.

If this notice of confiscation was before the disciplinary board, as the Court must assume since the respondent submitted it as part of the administrative record of this disciplinary action, it may have been what led the board astray. The notice of confiscation is the only document in the record submitted to the Court that mentions forgery or use of tape, both of which feature prominently in the board's statement of the facts it relied on for its decision.

A notice of confiscated property is not a charging instrument in IDOC disciplinary proceedings. Disciplinary charges are brought against inmates by means of a conduct report. The charging document in this case is the conduct report drafted by Counselor Jacks, which does not accuse Mr. Higgason of altering or forging documents or possessing and using tape. Prison officials could have prepared another conduct report charging Mr. Higgason with forgery, altering official or court documents or possessing and using tape, but they did not do so.

Moreover, even if the Notice of Confiscated Property could somehow be construed as charging Mr. Higgason with forgery, altering documents or possessing or using tape, it would violate the protections of *Wolff* because the notice is dated September 23, 2003, the same day the

disciplinary board conducted its hearing. Due process requires that a prisoner charged with a disciplinary offense be given "advance written notice of the charges against [him] at least twenty-four hours before the hearing." *Henderson*, 13 F.3d at 1077 (citing *Hill*, 472 U.S. at 454 and *Wolff*, 418 U.S. at 566). Mr. Higgason specifically declined to waive twenty-four hour notice of the hearing. (Resp't Ex. B, Notice of Disciplinary Hearing /Screening Report).

**C.     Conclusion**

Due process requires "some evidence" to support the decision of the prison disciplinary board." *Hill*, 472 U.S. at 455. The disciplinary board must write a summary of the evidence it relied on to find the accused guilty in order to "protect the inmate against collateral consequences based on a misunderstanding of the original proceeding."*Wolff*, 418 U.S. at 565. The evidence cited by the board must establish "the evidence underlying its decision" in order to protect the inmate "from mischaracterization of the disciplinary action when it comes under review." *Redding*, 717 F.2d at 1116.

The disciplinary board that heard the charges against Mr. Higgason prepared a written statement of the evidence underlying its decision. This statement notes that Mr. Higgason forged or altered documents and that he possessed and used tape. But, since Mr. Higgason was not charged with any of these offenses, the board's reliance on these facts constitutes a misunderstanding of the proceeding. The board did not state any facts supporting a finding of guilt on Counselor Jacks's charge in her conduct report — that Mr. Higgason was attempting to copy his certificate of service. The board apparently did not even understand that was the offense with which she charged Mr. Higgason.

The courts give wide leeway to prison officials when reviewing prison disciplinary actions pursuant to § 2254. But there is an important line "between constitutional adequacy and inadequacy" when reviewing a disciplinary board's statement of the evidence relied on. *Redding v. Fairman*, 717 F.2d at 1116. Even giving the respondent the benefit of every doubt, it is impossible to conclude that this disciplinary board, in this case, provided an adequate "'written statement . . . as to the evidence relied on and reasons' for the disciplinary action," *Wolff*, 418 U.S. at 564 (citing *Morrissey v. Brewer*, 408 U.S. at 489), that actually supports a finding of guilt on the charge brought against Mr. Higgason.

Because the disciplinary board's summary of facts relied on for its decision cites no evidence that can be construed as supporting a finding that Mr. Higgason sought to have his certificate of service reproduced, the Court must grant his application for writ of habeas corpus.

**ORDER**

The Court **GRANTS** this petition, **DIRECTS** the Respondent to restore Mr. Higgason to Credit Class II retroactively to the date he was demoted as a result of the disciplinary action that forms the basis of this petition for writ of habeas corpus, and **DIRECTS** the Respondent to **AFFORD** Mr. Higgason all good time credits he would have earned had he not been demoted in credit earning class.

SO ORDERED on November 14, 2006.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT